UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JOHN ROSS DEW, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:18-CV-0057-ERW |
| NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security** | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of John Ross Dew ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (ECF 19), Defendant filed a brief in support of the Answer (ECF 26), and Plaintiff filed a brief in reply (ECF27).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB under Title II of the Social Security Act on August 26, 2014 (Tr. 170-171). Plaintiff was initially denied relief on November 20, 2014, and on December 17, 2014, he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 116-117). After a hearing, by a decision dated October 11, 2016, the ALJ found Plaintiff was not disabled (Tr. 46-54). Plaintiff filed a *Request for Review of Hearing Decision* on December 5, 2016 (Tr. 162). On November 15, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Plaintiff appealed to the United States District Court for the Eastern District of Missouri on January 1, 2018 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and Plaintiff has not engaged in substantial gainful activity since May 4, 2012, the alleged onset date of his disability (Tr. 24).

The ALJ determined Plaintiff has the severe impairments of degenerative disc disease, obesity, pelvic fractures, left femur fracture, left foot and ankle osteoporosis, and mild pes planus[1] (Tr. 24). The ALJ also found Plaintiff has the medically determinable impairment of borderline intellectual functioning, but the impairment does not cause more than a minimal limitation on Plaintiff's ability to perform mental work activities, and is therefore non-severe (Tr. 24). The ALJ found no impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25).

The ALJ conducted a hearing with Plaintiff, Plaintiff's counsel, and Elizabeth Wheeler, a vocational expert, on August 22, 2016 (Tr. 36). At the hearing, Plaintiff testified he was born in 1981, and was 34 years old on the date of his hearing (Tr. 44). Plaintiff is 5'10" tall, and weighs 300 pounds (Tr. 44-45). He testified he has gained weight since his accident[2] on May 4, 2012, because he is no longer as active as he was before the fall (Tr. 45). Plaintiff lives with his mother, and is able to drive short distances of less than 15 miles approximately once or twice a day (Tr. 45). During high school, Plaintiff was in the special education program which afforded him extra time to take his tests (Tr. 52-53). Plaintiff obtained a high school diploma (Tr. 52-53).

---

[1] Pes planus is more commonly known as flatfoot.
[2] On May 4, 2012, Plaintiff suffered a work-related injury when he fell over 60 feet when the cell phone tower he was working on collapsed. The fall caused injuries to his lower back, pelvis, femur, and nerve damage. At the time of the hearing, Plaintiff still had an open Missouri Worker's Compensation claim as a result of the accident. (Tr. 41, 48).

2

Plaintiff testified the primary limiting factor on his ability to work is pain located in his lower and middle back, pelvis, left knee, and both feet (Tr. 46-47). Plaintiff suffers from sharp and stabbing knee pain, throbbing back pain, and a burning sensation in his feet (Tr. 47). He is not taking any prescribed medications for the pain, only Aleve, which he is able to get over-the-counter (Tr. 47). He describes his lower back pain as anywhere between a four and a six on a ten-point scale, on any given day (Tr. 55). Plaintiff wears a brace which controls the lower part of his leg below his left knee (Tr. 56). Problems with his left leg cause him to slip and fall easily (Tr. 56). Plaintiff also testified he must sit down when he takes a shower because he has a difficult time maintaining balance when he closes his eyes (Tr. 63). Plaintiff's ability to turn, grip, or hold onto things with his non-dominant hand is also limited as a result of a 2014 fall (Tr. 57). Plaintiff last visited a doctor in 2014 (Tr. 47-48). He has not visited a doctor since, because he no longer has medical insurance, and does not have any money (Tr. 47-48).

Plaintiff testified his typical day consists of staying at home, with a once-weekly trip to go fishing (Tr. 50). Plaintiff is able to do some household chores including a small amount of cooking, laundry, taking out the trash, and infrequently vacuuming or sweeping (Tr. 51-52). Plaintiff's past employment includes work for General Overman as a laborer installing equipment and climbing cell towers, delivering mail for the United States Postal Service, laboring for Magna Siding of America, in construction for Cleveland Gutter Works and Aiden Taylor Enterprises, and stocking and selling for Johnny Mac's (Tr. 66-70). Plaintiff also worked in at least two factories assembling fuel tanks and pumps which go inside of refrigerators (Tr. 71).

The vocational expert, Elizabeth Wheeler, testified Plaintiff's prior work was classified under the Dictionary of Occupational Titles ("DOT") as a production assembler, stock clerk,

mail carrier, cable installer, and constructor I (Tr. 74-75). Ms. Wheeler testified Plaintiff is not able to perform any of his past work; however, he could do sedentary work, including in positions as an office clerk, information clerk, and call out operator (Tr. 76).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform sedentary work (Tr. 26). He can: lift up to 15 pounds occasionally; stand/walk for two hours and sit for up to 6 hours in an 8-hour workday, with normal break; occasionally push or pull on the left upper extremity; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; never balance and crawl, occasionally stoop, knell, and crouch; avoid concentrated exposure to extreme cold, and excessive vibration; avoid unprotected heights; and avoid concentrated exposure to hazardous machinery (Tr. 26).

The ALJ found Plaintiff is unable to perform any past relevant work[3] (Tr. 30). The ALJ also found there are jobs, which exist in significant numbers in the national economy, which Plaintiff can perform. Thus, the ALJ concluded Plaintiff was "not disabled" (Tr. 26-31).

Plaintiff appeals, arguing the ALJ failed to consider all of Plaintiff's limitations when determining Plaintiff's RFC.

### III.     LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first

---

[3] Plaintiff's past relevant work includes construction, delivering mail, stocker, pulling wire, and in a factor (Tr. 66-72).

the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past to determine if the claimant can perform any past relevant work. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national

5

economy which can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed, if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision, which is supported by substantial evidence, is not subject to reversal, merely because substantial evidence may also support an opposite conclusion, or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the ALJ's decision, Plaintiff argues the ALJ failed to consider all of Plaintiff's limitations when determining his RFC, specifically, Plaintiff's need for frequent rest breaks.

In his decision, the ALJ found Plaintiff has the RFC to perform sedentary work (Tr. 26). He can: lift up to 15 pounds occasionally; stand/walk for two hours and sit for up to 6 hours in an 8-hour workday, with normal break; occasionally push or pull on the left upper extremity; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; never balance and crawl, occasionally stoop, knell, and crouch; avoid concentrated exposure to extreme cold, and excessive vibration; avoid unprotected heights; and avoid concentrated exposure to hazardous machinery (Tr. 26).

A claimant's RFC is what a he can do despite his or her limitations. *See* 20 C.F.R. § 404.1545. "Residual functional capacity is an assessment of an individual's ability to perform sustained work-related physical activities in a work setting for eight hours a day, five days a week, or the equivalent work schedule." *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) *citing* Social Security Ruling 96–8p. When finding Plaintiff's RFC, the ALJ evaluates the record as a whole, including Plaintiff's own testimony regarding his symptoms and limitations, the Plaintiff's medical records, and any medical opinion evidence. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). A Plaintiff's RFC is a medical question where "some" medical evidence must support the ALJ's RFC determination. *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001). It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) *citing Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

In the present case, Plaintiff's RFC was based on the ALJ's finding of severe impairments of degenerative disc disease, obesity, pelvic fractures, left femur fracture, left foot and ankle osteoporosis, and mild pes planus (Tr. 24). The ALJ found Plaintiff had the non-severe impairments of status-post left wrist fracture, and borderline intellectual functioning (Tr. 27).

The ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

a. **Dr. Alvarez's Medical Opinion**

Plaintiff contends the ALJ failed to properly consider all of the medical evidence, specifically a limitation from one of Plaintiff's treating physicians, Dr. Lizette Alvarez. Plaintiff argues Plaintiff's RFC should include a need for frequent rest breaks which would preclude him from being able to obtain a job in the national economy accordingly to the testimony of the vocational expert (ECF 19 at 9-10).

In his July 2014 report, Jason Hinson, MS, OTR/L[4] noted, "it is felt that the [Plaintiff] could benefit from a position that allows for frequent rest periods and the ability to modify postures to complete tasks…" (Tr. 1544). Relying on Mr. Hinson's report, Dr. Alvarez determined Plaintiff would require frequent rest periods to reposition every 30 minutes for approximately 5 minutes (Tr. 92). Plaintiff contends this restriction would preclude him from working, and should have been considered by the ALJ.

In his opinion, the ALJ appropriately considered Dr. Alavarez's opinion statement in the context of the rest of Plaintiff's medical evidence and testimony. The ALJ considered Dr. Alvarez's July 2014 opinion where she noted Plaintiff was able to "handle occasional medium physical demand loads from knees to overhead" (Tr. 92). The ALJ also considered medical evidence from Dr. Alvarez in June and July 2012, which stated Plaintiff "progressed well with therapy" and he still had "some" pain but was weaning off his pain medication (Tr. 26). In June 2013, the ALJ considered medical evidence from Jessica Boyer, a Physical Therapist, who noted Plaintiff said he was "able to hike 2 miles through the woods without difficulty" on some days (Tr. 27, 623). The ALJ also considered evidence from Dr. Ida Fox who recommended surgery which Plaintiff ultimately underwent in February 2013 (Tr. 27). In January 2014, Dr. Sandra Klein, Plaintiff's treating physician, stated Plaintiff was "actually quite functional" which the ALJ notes, was "consistent with the [Plaintiffs] previously reported ability to hike up to three miles" (Tr. 27, 1365).

The ALJ also considered Dr. Timothy Farley's November 2013 through January 2014 notes (Tr. 27). Dr. Farley noted Plaintiff underwent an arthroscopic procedure in November 2013, and thereafter participated in physical therapy (Tr. 27). By January 2014, Dr. Farley noted Plaintiff had an "excellent" range of motion, and required "no further intervention [and] no

---

[4] Jason Hinson has a Master of Science degree and is a registered and licensed Occupational Therapist.

9

further physical therapy" (Tr. 27, 829-848) Dr. Farley also noted Plaintiff had "reached maximal medical improvement" (Tr. 27, 848). In his opinion, the ALJ notes he afforded "great weight" to Plaintiff's treating physicians (Tr. 28).

Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision, which is supported by substantial evidence, is not subject to reversal, merely because substantial evidence may also support an opposite conclusion, or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

The ALJ evaluated Plaintiff's complete medical record, and made an appropriate determination of Plaintiff's RFC. The ALJ provided good reasons for affording significant weight to Plaintiff's treating physicians, and did not disregard Dr. Alvarez's opinion, but rather, evaluated it in the larger context of the medical record to determine Plaintiff's RFC. Substantial evidence supports the ALJ's conclusions regarding Plaintiff's limitations, and his RFC. Plaintiff's need to take frequent rest breaks was an opinion provided by one treating physician, and the ALJ appropriately weighed Dr. Alvarez's opinion against the rest of the medical evidence in the record to determine Plaintiff's RFC.

   **b. Hypothetical to the Vocational Expert**

Plaintiff contends the ALJ failed to properly propose a hypothetical to the vocational expert during the hearing, which indicated a need for frequent rest breaks. "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) *citing Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir.1994). During the hearing, the ALJ questioned the vocational expert, Elizabeth Wheeler, as follows:

> **Q:** Okay. Assume a hypothetical individual of the claimants age, education and past work experience as you've just described who is limited as follows: Lift up 20 pounds occasionally; lift/carry up to 10 pounds frequently; stand, walk for about two hours and sit for up to six hours in an eight-hour workday with normal breaks; this individual can occasionally push or pull on the left, the left upper extremity; this individual can occasionally climb ramps or stairs, never  limb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; this individual should avoid exposure to extreme cold – avoid concentrated exposure to extreme cold and concentrated exposure to excessive vibration; this individual should avoid  unprotected heights and concentrated exposure to hazardous machinery. Could such a person perform any of claimant's past work as actually performed by the claimant or as generally performed in the national economy?
>
> **A:** No, sir.
>
> **Q:** Using the same hypothetical, could this individual perform any other jobs that exist in the national economy?
>
> **A:** Yes, and I can give you some examples (Tr. 75-76).

Following the vocational expert's proposal of example positions in the national economy Plaintiff could perform using the above limitations, the ALJ proposed additional limitations, and questioned the vocational expert about positions considering those limitations.

> **Q:** Assume the previous assume the previous limitations in the first hypothetical and add the following: This individual should never balance, and never crawl, would that affect the jobs that exist in the national economy?
>
> **A:** I would say not for the sedentary positions given and for that category, I would say no, sir.
>
> **Q:** Okay. Then, take the same -- assume the previous limitations in the second hypothetical and then add the following: This individual can stand/walk for about one hour and sit for up to seven hours in an eight-hour workday with normal breaks, would that affect the jobs that exist in the national economy?
>
> **A:** I would say it could affect some sedentary jobs as that's defined for six hours and alternating standing and walking for two, based on my vocational experience, with the three jobs given, you know, samples, I would still believe that that individual could perform those jobs, though.

> **Q:** Okay. Then assume the previous limitations in the second hypothetical again and add the following: This individual would be off task by -- work allowed would be off task 10% of the day in addition to regularly scheduled breaks, would that affect the jobs in the national economy?
>
> **A:** I would say as far as the, you know, scheduled breaks in addition to 10%, I would say, they would not affect sedentary jobs, I would say anything over 10% would (Tr. 76-77).

Plaintiff contends Plaintiff's RFC is improper, and should be reversed because the ALJ presented frequent rest breaks to the vocational expert but failed to include a rest limitation in Plaintiff's RFC determination. Specifically, Plaintiff argues because Dr. Alvarez indicated Plaintiff needed a 5 minute break every 30 minutes, and the vocational expert indicated any breaks which required Plaintiff to be off task more than 10% of the day would preclude him from work, Plaintiff cannot work. However, the vocational expert indicates even given some rest or movement requirement, Plaintiff could perform the jobs indicated by the vocational expert considering his limitations.

The ALJ's hypothetical questions to the vocational expert only needs to include impairments which the ALJ determines are supported by the record as a whole. During the hearing, the ALJ did question the vocational expert regarding job placement if an individual would be off task more than 10% of the time, but he was not required to specificall question the vocational expert on other impairments he did not believe were supported by the record as a whole.

Because the ALJ's determination of Plaintiff's RFC was based on substantial evidence, the questions proposed to the vocational expert were proper. The ALJ's determination of Plaintiff's RFC without the need for frequent rest breaks is supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds substantial evidence on the record, as a whole, supports the Commissioner's decision Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 18th day of April, 2019.

_____
**E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE**